UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WANDA SPENCER,

        Plaintiff,

                                        **MEMORANDUM AND ORDER**
        -against-                       25-CV-5087 (OEM)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
-----------------------------------------------------------------x

ORELIA E. MERCHANT, United States District Judge:

On September 11, 2025, Wanda Spencer ("Plaintiff") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the Social Security Administration's ("Defendant") final decision denying her application for disability insurance benefits ("DIB"). *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."). Before the Court are the parties' cross-motions for judgment on the pleadings. *See generally* Notice of Motion for Judgment on the Pleadings, Dkt. 10 ("Plaintiff's Motion"); Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, Dkt. 10-1 ("Pl.'s Mem."); Notice of Cross-Motion for Judgment on the Pleadings, Dkt. 12 ("Defendant's Motion"); Memorandum of Law in Support of the Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, Dkt. 12-1 ("Def.'s Mem."). Having considered the parties' pleadings, briefs, and the administrative record, the Court denies Plaintiff's Motion and grants Defendant's Motion.

## BACKGROUND

### A. Plaintiff's DIB Application

Plaintiff applied for DIB on May 24, 2023, alleging that she had been disabled since February 27, 2023, due to back pain and fibromyalgia. *See* Compl. ¶ 3; *see* Pl.'s Mem. at 1;

Administrative Transcript at 26-27, Dkt. 9 ("Administrative Record" or "R.")[1]; Joint Statement of Facts at 6-7, Dkt. 13 ("Joint Statement").[2]  Plaintiff has a college degree and was "employed as a station agent for the New York City Transit Authority" until she stopped working on February 27, 2023, allegedly due to her medical conditions.  Pl.'s Mem. at 1; R. at 13.  Defendant initially denied Plaintiff's application on August 18, 2023, R. at 366, 26-31, and again on reconsideration on April 16, 2024, *id.* at 366, 32-37.  Plaintiff subsequently filed a request for a hearing on May 6, 2024, *id.* at 53-55, and appeared at a telephonic hearing before Administrative Law Judge Brian Crawley ("ALJ") on November 26, 2024, *id.* at 366, 8-25.

### B.  The ALJ's Findings

On December 6, 2024, the ALJ denied Plaintiff's application for DIB under Social Security Act §§ 216(i) and 223(d) (codified at 42 U.S.C. §§ 416(i) and 423(d), respectively).  *Id.* at 366-74.  Applying the Social Security Administration's five-step sequential evaluation process, *see* 20 C.F.R. § 404.1520(a)(4) (2026), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 27, 2023, Plaintiff's alleged disability onset date, R. at 369.

At step two, the ALJ determined that Plaintiff experienced the severe impairment of "degenerative disc disease of the thoracic spine and lumbar spine."  R. at 369.  With regards to Plaintiff's fibromyalgia, the ALJ determined that "the medical evidence of record fail[ed] to establish fibromyalgia as a medically determinable impairment as required under the Social Security Rules" and specifically noted that the medical evidence "fail[ed] to reveal . . . at least 11 positive tender points," presented "no evidence of repeated manifestations of 6 or more

---

[1] When citing to the Administrative Record, the Court refers to the bolded page numbers in the bottom right corner of each page.

[2] When citing to the Joint Stipulation, the Court refers to the page numbers contained in the automatically generated ECF header.

fibromyalgia symptoms," and failed to exclude other disorders as the possible cause. *Id.* The ALJ additionally observed that Plaintiff had treated her condition "only with her primary care provider," as opposed to a rheumatologist, and had no "trigger points evident at her consultative examination." *Id.*

At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled the criteria for any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2026). R. at 369-70. The ALJ then assessed that Plaintiff retained the "residual function capacity" ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds. The claimant can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl.

R. at 370; *see id*. at 370-73.

At step four, the ALJ determined that Plaintiff "[was] capable of performing past relevant work as a station agent," which "does not require the performance of work-related activities precluded by [her RFC]." *Id.* at 373. Accordingly, the ALJ concluded that Plaintiff was not disabled and, therefore, not eligible for DIB from February 27, 2023, the alleged date of onset, through December 6, 2024, the date of the ALJ's decision. *Id.* at 373-74.

The Social Security Administration Appeals Council denied Plaintiff's request for review on August 29, 2025, rendering the ALJ's decision the final decision of Defendant. *Id.* at 357-62.

## C. District Court Procedural History

On September 11, 2025, Plaintiff commenced this 42 U.S.C. § 405(g) action, seeking review of Defendant's final decision. *See generally* Compl. On September 16, 2025, Magistrate Judge Clay H. Kaminsky issued a scheduling order, *see* Scheduling Order, dated Sep. 16, 2025, and amended the schedule on October 17, 2025, and November 17, 2025, due to a lapse of

3

appropriations to the Social Security Administration at that time, *see* Order, dated Oct. 17, 2025; Order, dated Nov. 17, 2025.  On November 26, 2025, the case was assigned to the undersigned, and on December 22, 2025, this Court granted another extension of time, amending the schedule again, *see* Order, dated Dec. 22, 2025.

In keeping with the amended schedule, Defendant filed the Administrative Record on January 26, 2026.  *See generally* R.  Plaintiff filed a motion for judgment on the pleadings on March 25, 2026, *see generally* Pl.'s Mem., and Defendant filed a cross-motion for judgment on the pleadings on May 26, 2026, *see generally* Def.'s Mem.  Plaintiff declined to file a reply brief, and the parties filed their Joint Stipulation on July 15, 2026, *see generally* Joint Stip.

## LEGAL STANDARDS

### A.  Judicial Review

A district court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g).

When assessing whether a decision was supported by substantial evidence, district courts do not review *de novo*.  *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").  Rather, they "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Courts are "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences

4

can be drawn," *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)), but "it is up to the agency, and not [district courts], to weigh the conflicting evidence," *Lebby v. Comm'r of Soc. Sec.*, 20-CV-4760 (PKC), 2022 WL 580983, at *7 (E.D.N.Y. Feb. 24, 2022) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  "Substantial evidence" is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Selian*, 708 F.3d at 417).  Under this "very deferential standard of review," district courts can reject an ALJ's factual findings "only if a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further development of the record is appropriate.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A court should grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) if, under the pleadings, "the moving party is entitled to judgment as a matter of law."  *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995).

## B.  Regulatory Framework for Determining DIB

DIB is available to individuals who are disabled.  A person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

When determining whether an individual is disabled and therefore entitled to DIB, an ALJ employs a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4) (2026). At step one, an ALJ considers a claimant's work activity. *Id.* § 404.1520(a)(4)(i). If a claimant is performing substantial gainful activity, then the claimant is not disabled, and the inquiry stops there. *Id.*

If an ALJ does determine that a claimant is not performing substantial gainful activity, the ALJ proceeds to step two, where they determine whether a claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. *Id.* §§ 404.1520(a)(4)(ii), 404.1509. If a claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled, and the inquiry stops there. *Id.* § 404.1520(a)(4).

If an ALJ determines that a claimant does have a severe impairment or combination of impairments that meets the durational requirement, they proceed to step three, where the ALJ considers whether a claimant's medical impairment or combination of impairments appears on a list maintained by the Social Security Administration that defines impairments of sufficient severity as to prevent any gainful activity. *Id.* §§ 404.1520(a)(4), 404.1520(a)(4)(iii). If a claimant's impairment meets a definition on the list, then the ALJ will find the claimant disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* §§ 404.1520(a)(4)(iii)-(iv).

At step four, the ALJ evaluates a claimant's "past relevant work" and determines a claimant's RFC, *id.* § 404.1520(a)(4)(iv), which is defined as "the most [a claimant] can still do despite [their] limitations," *id.* § 404.1545(a)(1). Work is past relevant work if a claimant

performed the work within the past five years, the work qualifies as substantial gainful activity, and the work lasted long enough for a claimant to learn how to do it. *Id.* § 404.1560(b)(1)(i). If a claimant's RFC permits them to perform past relevant work, they are not disabled, and the inquiry stops there. *Id.* §§ 404.1560(b)(3); 404.1520(a)(4)(iv).

If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of the claimant's RFC, age, education, and work experience, they can perform other substantial gainful employment. *Id.* § 404.1520(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five, "the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform." *Nieves v. Comm'r of Soc. Sec.*, 20 Civ. 8873 (SLC), 2022 WL 951107, at *7 (S.D.N.Y. Mar. 30, 2022) (citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). A claimant who can perform such jobs is deemed not disabled. 20 C.F.R. § 404.1520(a)(4)(v) (2026).

## DISCUSSION

### A. Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence.

Plaintiff challenges the ALJ's RFC determination. *See* Pl.'s Mem. at 6-11. Specifically, Plaintiff contends that the ALJ "unjustifiably rejected the best evidence," presented by her treating physician, Mohammad Mazid, M.D. ("Dr. Mazid"), "and instead relied on the opinions of doctors having a highly dubious grasp of [her] medical picture." *Id.* at 11. Defendant responds that the "ALJ's RFC finding was proper" and supported by substantial evidence. Def.'s Mem. at 11 (citation modified); *see id.* at 11-21.

The Court finds that the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence. For DIB claims filed on or after March 27, 2017, the applicable Social Security Administration regulations provide that the agency "will not defer or give any specific

7

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (2026). Instead, the ALJ must "evaluate the persuasiveness," *id.*, of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the Social Security Administration's policies and evidentiary requirements, *id.* § 404.1520c(c)(1)-(5). The "most important factors" are the first two: supportability and consistency. *Id.* § 404.1520c(b)(2). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* § 404.1520c(b).

Plaintiff states that she "last worked on February 27, 2023[,] . . . due to back pain and fibromyalgia." Pl.'s Mem. at 1. Plaintiff proceeded to have the following, relevant medical visits:

- On March 27, 2023, Plaintiff saw her primary care physician, Dr. Mazid, for a follow-up appointment less than a month after she had breast reconstruction surgery. Joint Statement at 2 (citing R. at 340-45).[3] At that appointment, Plaintiff reported "low back pain." R. at 340; *see* Joint Statement at 2. Dr. Mazid diagnosed her with "[m]idline low back pain without sciatica, unspecified chronicity"; "[c]hronic mid back pain;" and "[f]ibromyalgia affecting multiple sites," among other conditions. R. at 343; *see* Joint Statement at 2. He described Plaintiff's back pain as "[e]xpanding," advised Plaintiff to take Advil, and

---

[3] Prior to the relevant time period, Plaintiff had "stage 0 breast cancer," which "did not need radiation or chemotherapy" but for which Plaintiff "underwent a double mastectomy, followed by placement of silicone breast implants." Joint Statement at 1. Plaintiff had breast reconstruction in or around February to March 2023. *Id.* The Court notes that Plaintiff's history of cancer was not the subject of her DIB application and that Plaintiff has other health conditions, also not included in her DIB application, *see* R. at 27, 33 (listing solely "spinal disease" and "fibromyalgia"); as such, they are not addressed here.

Prior to the relevant time period, Plaintiff did, however, seek treatment for fibromyalgia. On January 30, 2023, Dr. Mazid noted, among other things, that Plaintiff's fibromyalgia "waxed and waned but was better. He advised her to continue Elavil and see a rheumatologist as needed." Joint Statement at 1-2 (citing R. at 354-55).

ordered lumbar and thoracic spine x-rays. R. at 343. Regarding her fibromyalgia, Dr. Mazid noted that it was "wax[ing] [and] wan[ing] but better" and suggested that she continue taking Elavil and consider seeing a rheumatologist. *Id.*

- On May 16, 2023, Plaintiff followed up with Dr. Mazid about her back pain, among other issues. *Id.* at 335-39. She reported doing physical therapy and explained that, while her pain was "[b]etter," it was "not to [the] expected level." *Id.* at 337. Dr. Mazid diagnosed her with "[c]hronic bilateral low back pain without sciatica" and "[f]ibromyalgia affecting multiple sites," among other conditions. *Id.* For her back pain, he ordered an MRI of her lumbar spine, *id.* at 337, and advised her to continue taking "NSAIDs[]" at night. *Id.* Regarding her fibromyalgia, Dr. Mazid again noted that it was "wax[ing] [and] wan[ing] but better" and suggested that she continue taking Elavil and consider seeing a rheumatologist. *Id.*

- The same day, an MRI purportedly showed "disc bulging, facet arthropathy[,] and [n]erve impingement of [the] left 4th spinal nerve[,] which [is] causing shooting pain." *Id.* at 335.

- On July 12, 2023, Plaintiff followed up with Dr. Mazid. *See* Joint Statement at 3 (citing R. at 328-43). At this appointment, Plaintiff did not report back pain, and Dr. Mazid did not diagnose back pain. R. at 328-43. However, he did diagnose "[f]ibromyalgia affecting multiple sites," among other conditions, and noted that it was "wax[ing] [and] wan[ing]" but "[i]mproving." *Id.* at 331-32. He again suggested that she continue taking Elavil and consider seeing a rheumatologist. *Id.*

- On August 3, 2023, Plaintiff was examined by Sayeda Asad, M.D. ("Dr. Asad"), a "nuclear medicine specialist, for a consultative examination" at the Social Security Administration's request. Joint Statement at 5 (citing R. at 274-77). A physical examination revealed, in pertinent part,

> No scoliosis, kyphosis, or abnormality in the thoracic spine. Lumbar spine flexion 60 degrees, extension 60 degrees, lateral flexion 10 degrees bilaterally, and full rotary movement bilaterally. Straight leg raising test is 60 degrees bilaterally. Sitting straight leg raising test is negative bilaterally. Full range of motion of shoulders, elbows, forearms, wrists and fingers bilaterally. Full range of motion of hips, knees[,] and ankles bilaterally. No joint deformity, subluxations, contractures or ankylosis. No joint heat, redness, swelling, effusion. Joints stable and non-tender.

R. at 276. Dr. Asad noted no neurologic sensory deficit, with "[s]trength 5/5 in the upper and lower extremities." *Id.* Plaintiff's "[h]and and finger dexterity [was] intact," with "[g]rip strength 5/5 bilaterally." *Id.* Dr. Asad noted mild degenerative changes in Plaintiff's lumbar spine and mild to moderate degenerative changes in Plaintiff's thoracic spine. *Id.* In terms of Plaintiff's exertional capacity, Dr. Asad observed "moderate limitations for squatting, kneeling, bending, walking and standing for a long period of time" and "moderate limitations for lifting, carrying, pushing, pulling heavy objects." *Id.* She saw "no trigger points . . . for fibromyalgia." *Id.* Nevertheless, Dr. Asad diagnosed "[l]ower back pain" and "[f]ibromyalgia," among other conditions. *Id.*

9

- On August 14, 2023, C. Li, M.D. ("Dr. Li") reviewed the record in connection with Plaintiff's DIB application. Joint Statement at 6 (citing R. at 29-30). In pertinent part, Dr. Li noted that Plaintiff had the following exertional limitations: she could occasionally lift and/or carry 20 pounds; could frequently lift and/or carry 10 pounds; could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; and could sit (with normal breaks) for more than six hours on a sustained basis in an eight-hour workday. R. at 29. Plaintiff otherwise had the postural limitations of only occasionally being able to climb ramps, stairs, ladders, ropes, and scaffolds; balance; stoop; kneel; crouch; and crawl. *Id.* at 30.

- On October 17, 2023, Plaintiff saw Dr. Mazid for another follow-up appointment. Joint Statement at 3 (citing R. at 316-24). At this appointment, Dr. Mazid diagnosed "[c]hronic bilateral low back pain without sciatica," R. at 322, and "[f]ibromyalgia affecting multiple sites," among other conditions, *id.* at 321. For her back pain and fibromyalgia, he referred her to physical therapy two-to-three times per week for eight weeks. *Id.* at 321-22. For her fibromyalgia, Dr. Mazid additionally noted that it was "wax[ing] [and] wan[ing]" but "[i]mproving" and suggested that she continue taking Elavil and consider seeing a rheumatologist. *Id.* at 321.

- On April 16, 2024, V. Au, M.D., affirmed Dr. Li's findings. Joint Statement at 6 (citing R. at 34-36).

- On March 8, 2024, Plaintiff saw Dr. Mazid for clearance for breast revision surgery. Joint Statement at 4 (citing R. at 304-05). After examining her, Dr. Mazid cleared Plaintiff for surgery, noting that she was "well appearing" and "stable," with "no medical contraindications for the planned procedure." R. at 305. His assessment of her current condition noted "[f]ibromyalgia," among other conditions, but did not discuss back pain. *Id.*

- From May 17, 2023, to August 7, 2024, Plaintiff saw Dr. Mazid and other practitioners at the same office approximately five additional times, at which times, Plaintiff's fibromyalgia and back pain were not addressed. *See* Joint Statement at 3-4 (citing R. at 283-301, 307-15, 325-27).

On October 18, 2024, Dr. Mazid completed a standardized, multiple-choice "Medical Assessment of Ability to Do Work-Related Activities" form, *see* R. at 281-82 ("Medical Assessment"), "in connection with Plaintiff's claim for benefits," Joint Statement at 4. He listed "[f]ibromyalgia, [a]ffecting multiple sites" as a diagnosis, as well as "[b]reast cancer chronic pain [and] muscle pain." R. at 281. Among other things, he stated that Plaintiff experienced "[d]aily severe pain" and was "limited in ambulation and movement in the extremities." *Id.* Regarding Plaintiff's "[e]xertional [l]imitations," Dr. Mazid asserted that Plaintiff could "[o]ccasionally lift

and carry for a maximum of 1/3 of an eight-hour workday[] less than 10 pounds" and "[s]tand and/or walk (with normal breaks)" for "less than two hours" in "an eight-hour workday." *Id.* He opined that Plaintiff could sit for "less than 4 hours" in "an eight-hour workday," use her "hands for fine and gross motor activities . . . less than 1/3 of an 8-hour workday," and "[r]each[] in all directions . . . less than 1/3 of an 8-hour workday." *Id.* at 282. As to other "significant limitations," Dr. Mazid also opined that "[d]ue to severe pain associated with fibromyalgia, cancer, . . . chronic pain[,] and muscular pain, patient is unable to fulfill all daily living activities." *Id.*

In his decision, the ALJ walked through each medical opinion in detail when determining Plaintiff's RFC. *See* R. at 370-73. As stated above, the applicable regulations require an ALJ to articulate how persuasive they find a given medical opinion based on five factors, the most important being supportability and consistency. 20 C.F.R. § 404.1520c(b)(2) (2026). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The regulation states that the Social Security Administration "will explain how [it] considered the supportability and consistency factors" and "may, but [is] not required to, explain how [it] considered the [remaining] factors." *Id.* § 404.1520c(b)(2). When he reached Dr. Mazid, the ALJ discussed both the supportability and consistency factors, finding that Dr. Mazid's Medical Assessment was "not persuasive," for several reasons, including that:

> It is neither supported by the entirety of the medical record including the claimant's reported activities of daily living and the underlying treatment records with Dr. Mazid as well as the claimant's ability to work consistently from 2014 through 2023 (Exhibits 2F, 7D and 8D). The opinion is likewise not consistent with the

> findings of the consultative examiner, Dr. Asad, nor with the assessments of the [consulting] state agency physicians. The claimant is described as having a normal musculoskeletal examination with a normal gait, motor/sensory and deep tendon reflexes, she has no treatment with any specialist as related to her back pain and the objective record does not support the claimant's diagnosis of fibromyalgia as there are no signs and symptoms contained in the record to support a medically determinable impairment of fibromyalgia as discussed in detail above (Exhibit 4F page 25). The limitations as noted herein are not supported by the physical exams noted in Exhibits 4F/3, 9, 14, 15, 25, 27, 36, 41, 45, 48, 51.

R. at 372-73; *see, e.g.*, *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (affirming that substantial evidence supported an ALJ's determination that a treating physician's opinion was not entitled to controlling weight and that the claimant retained the RFC to perform her previous work).

Plaintiff's attempt to undermine this factual finding is unavailing. *See* Pl.'s Mem. at 6-11. Plaintiff acknowledges that treating physicians are no longer accorded "controlling weight" under the current regulations, *id.* at 8; *see* 20 C.F.R. § 404.1520c(a) (2026), but nevertheless advocates for deference that is no longer required, *see* Pl.'s Mem. at 8-9. She also contends that the ALJ was required to "reach[] out to [Dr. Mazid] for clarification." Pl.'s Mem. at 9. However, the cases upon which Plaintiff relies are, *see* Pl.'s Mem. at 9, as Defendant points out, from the period prior to recent rule changes, such that they are no longer applicable, *see* Def.'s Mem. at 18. They either apply the former treating physician rule or speak to a former, related requirement to seek additional information from a claimant's medical sources, both of which no longer govern. *Compare* 20 C.F.R. § 404.1520c(a) (2026) (stating that the agency "will *not* defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources" (emphasis added)), *with* 20 C.F.R. § 404.1527(c)(2) (2016) (Prior to 2017, the regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] case record."); *compare* 20

C.F.R. § 404.1520b(b)(2)(i) (2026) ("We *may* recontact your medical source.  We *may* choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." (emphasis added))*, with Ferreras-Matos v. Comm'r of Soc. Sec.*, 20 Civ. 07106 (NSR)(JCM), 2021 WL 7287630, at \*14 (S.D.N.Y. Nov. 15, 2021) (quoting a prior iteration of the rule, 20 C.F.R. § 404.1512(e)(1) (2006), which stated: "[The Commissioner] *will* seek additional evidence or clarification from [applicant's] medical source when the report from [applicant's] medical source contains a conflict or ambiguity that must be resolved [or] the report does not contain all the necessary information." (alterations in original) (emphasis added)).  *See* Pl.'s Mem. at 9 (first citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996) (discussing the former requirement to seek additional information); then citing *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269, 276-77 (S.D.N.Y. 2010) (same, as well as discussing the former treating physician rule), *superseded by regulation*, *as recognized in Ferreras-Matos*, 2021 WL 7287630, at \*14; then citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (discussing the former treating physician rule); then citing *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 343 (E.D.N.Y. 2010) (discussing the former treating physician rule); then citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (discussing the heightened duty to develop the record in the context of *pro se* claimants, which is inapplicable here in light of Plaintiff's represented status); and then citing *Schaal v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 1998) (discussing the former treating physician rule)).  Further, while the ALJ is required to develop the record, "a deficiency in reasoning by a treating physician is not the same as a gap in treatment records." *Schillo*, 31 F.4th at 76.

In essence, Plaintiff is disputing the ALJ's weighing of the evidence.  *See* Pl.'s Mem. at 7-11.  However, disagreement about the weight of the evidence is not tantamount to a finding that

13

"a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (quoting *Warren*, 29 F.3d at 1290); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982))); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*." (first citing *Selian*, 708 F.3d at 417; and then citing *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012))).[4]

Having reviewed the Administrative Record, the Court finds that a reasonable factfinder could have agreed with the ALJ. *Brault*, 683 F.3d at 448. Therefore, the Court upholds the ALJ's evaluation of the medical opinion evidence, which is supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion is denied, and Defendant's Motion is granted. Accordingly, the ALJ's decision is affirmed.

---

[4] Specifically, Plaintiff challenges Dr. Asad's qualifications as a nuclear medicine specialist, as well as Dr. Li and Dr. Au's "only marginally useful" testimony as state agency physicians. Pl.'s Mem. at 10-11 (first quoting *Klodinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008); and then quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d. Cir. 2004)). Both of these arguments fail, however, for the reasons stated above: the regulations explicitly state that supportability and consistency—not the relationship with the claimant or specialization—are the two most important factors in assessing the persuasiveness of a given medical opinion, 20 C.F.R. § 404.1520c(b)(2) (2026), and the ALJ expressly applied those factors here. Otherwise, Plaintiff is applying outdated regulations and challenging the ALJ's weighing of the evidence. Moreover, Dr. Asad's qualifications are, as Defendant highlights, no less relevant than Dr. Mazid's qualifications as a family medicine doctor, *see* Def.'s Mem. at 16-17, and Plaintiff misapplies the language from *Halloran* and *Klodinski*, which, in fact, was in reference to a standardized form used by a treating physician, much like the one Dr. Mazid utilized here, *see Halloran*, 362 F.3d at 31 n.2; *Klodinski*, 274 F. App'x at 73.

The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

                                          _/s/_____

                                          ORELIA E. MERCHANT
                                          United States District Judge

July 28, 2026
Brooklyn, New York